389 A.2d 62

**COMMONWEALTH of Pennsylvania**

v.

**Jerome SILO.**

Supreme Court of Pennsylvania.

Argued June 27, 1975.

Decided July 14, 1978.

Neil Jokelson, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah E. Glass, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

This is a direct appeal from a judgment of sentence of life imprisonment entered upon a jury verdict finding appellant guilty of murder of the first degree.[1] The dispositive issue in this appeal is whether certain real evidence admitted at trial was obtained by an illegal search and seizure. The suppression court ruled that all of the challenged evidence was properly obtained. Since we disagree with the suppres-

1. This Court's jurisdiction is based upon section 202(1) of the Appellate Court Jurisdiction Act of 1970. 17 P.S. § 211.202(1) (Supp.1978–79). The question of appellant's mental competency to stand trial was raised below, and the lower court found appellant to be competent. This appeal was argued before the Court on June 27, 1975. The mental competency issue was neither briefed nor argued by counsel for appellant, although counsel did allude to the question in his brief, indicating that appellant objected to raising the issue on appeal. Since this Court was of the opinion that the question of mental competency could not be waived, on December 20, 1976 we filed a per curiam opinion directing appellant's counsel to submit a supplemental brief within thirty days to support the contention that appellant was incompetent to stand trial or to take an appeal. *Commonwealth v. Silo*, 469 Pa. 40, 364 A.2d 893 (1976). Ignoring our direction, counsel did not file the requested supplemental brief until March 31, 1978. The Commonwealth has filed a brief in response.

We have considered the contention that appellant was mentally incompetent to stand trial and to participate in the appellate process. We find that contention to be without merit. *See Commonwealth v. Davis*, 459 Pa. 575, 578, 330 A.2d 847, 848 (1975); *Commonwealth v. Kennedy*, 451 Pa. 483, 488, 305 A.2d 890, 892 (1973).

18

sion court's finding as to certain items of evidence, we reverse the judgment of sentence and order a new trial.[2]

In reviewing a suppression court's findings, this Court will consider the evidence of the Commonwealth and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.[3] *Commonwealth v. Harris,* 479 Pa. 131, 138, 387 A.2d 869, 873 (1978), *citing Commonwealth v. Kichline,* 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976). On the morning of October 10, 1969, a police officer responded to a call from two neighbors of the victim, Mrs. Silvia Silo, appellant's mother. Upon arrival at the scene, the officer was informed by these neighbors that at about 10:00 a. m. on October 9, 1969, the day before, they had heard an argument and screams emanating from the victim's residence. They stated further that appellant had for many years resided there with his mother. At about 2:40 p. m. on the ninth appellant came outside and sat on the porch steps. Shortly thereafter he was picked up by a rescue squad vehicle and was taken to a nearby hospital for treatment of chest pains.

The neighbors told the officer that they did not see Mrs. Silo leave for work at her usual time, between 3:00 p. m. and 3:30 p. m., on the ninth and further that an upstairs window which Mrs. Silo usually closed was left open overnight. They also said that they had telephoned the hospital and Mrs. Silo's place of employment and learned that she had not been seen at either place.

Given this information, the police officer, on the tenth, called the hospital where appellant was being treated and arranged with the hospital to pick up appellant's house key. The officer then drove to the hospital, obtained the key from a nurse, and returned to the Silo residence. The officer then radioed for assistance from another officer. When the second officer arrived, the officers unlocked the front door

2. Because we order a new trial we need not reach the merits of the other issues raised by appellant.

3. In the instant case appellant offered no evidence at the suppression hearing.

to the Silo house and entered. Once inside they discovered Mrs. Silo's dead body in the kitchen; subsequent medical examination revealed that death was caused by numerous stab wounds.

After discovering the body, the officers secured the area and requested assistance from homicide detectives. Several detectives arrived and after inspecting the kitchen, two of the detectives went to the hospital to attempt to interview appellant concerning his mother's death. At about 12:30 p. m., upon arriving at the hospital's intensive care unit where appellant was being treated, the officers questioned a nurse on duty about the diagnosis of appellant, because the officers were concerned about interviewing appellant while he was in intensive care. The nurse responded that she did not know the diagnosis or prognosis and that the officers should wait to talk to the physician who was familiar with appellant's condition.

While waiting for the doctor, the officers asked the nurse to give them any personal belongings that appellant had when he was admitted to the hospital. Pursuant to this request, the nurse went into the ward and returned and gave the officers the clothing appellant was wearing when he was admitted. The officers inspected the clothing and noted what appeared to be blood stains on appellant's trousers, undershorts, and inside the pockets of the trousers. Later laboratory tests showed that the blood on these items of clothing matched the victim's blood. This clothing was retained by the officers as evidence.

After waiting for approximately an hour, the officers finally were informed by a physician that there were no indications that appellant had a heart condition. The officers were then permitted to interview appellant. Appellant was then given his *Miranda*[4] warnings. He made no statement. The record indicates that during the time the officers were waiting to interview appellant they were at or near a counter outside of the door to the ward where the appellant

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

was located. Appellant was visible to them and was attached to some type of heartbeat monitor. Police testimony indicated that the officers were at the hospital for approximately two hours.

While the police were at the hospital, detectives conducted a search of the Silo residence. One detective noted "swipe marks" in the blood on the kitchen floor surrounding the victim's body, as if someone had attempted to mop up the blood; the detective also noted a trail of blood between the kitchen and the dining room. At about 3:30 p. m. on the tenth, detectives searched the upstairs of the house. In appellant's bedroom, the police found a bloody V-neck sweater under the bedspread. Later examination matched the blood on the sweater with the victim's blood type. The sweater was retained by police as evidence.

The clothing taken from the hospital and the sweater taken from appellant's bedroom constituted the key circumstantial evidence upon which the prosecution based its case.[5] None of this evidence was seized pursuant to a search warrant.

Appellant contends that the warrantless seizure of his clothing by police from his hospital room without his knowledge or consent violated his rights under the fourth amendment to the United States Constitution.[6] We agree.

■■ We begin our analysis with the oft-stated proposition that warrantless searches and seizures are *per se* unreasonable "subject only to a few specifically established and well-delineated exceptions." *E. g., Schneckloth v. Busta-*

5. As required by statute, 19 P.S. § 1187 (1964), we have reviewed the evidence and find it sufficient to support appellant's conviction for first degree murder.

6. The fourth amendment provides:
   "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
   U.S.Const. amend. IV.

*monte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *see Commonwealth v. Shaffer,* 447 Pa. 91, 103, 288 A.2d 727, 734 (1972), *cert. denied,* 409 U.S. 867, 93 S.Ct. 164, 34 L.Ed.2d 116 (1972); *Commonwealth v. Cockfield,* 431 Pa. 639, 644, 246 A.2d 381, 383 (1968). Furthermore, in this jurisdiction the burden is upon the Commonwealth to prove by a preponderance of the evidence that a search or seizure did not violate the fourth amendment.

*Commonwealth v. Ravenell,* 448 Pa. 162, 166, 292 A.2d 365, 367 (1972); *Commonwealth v. Mazzella,* 231 Pa.Super. 247, 250, 331 A.2d 784, 785 (1974); *see* Pa.R.Crim.P. 323(h).

The Commonwealth advances two basic arguments to justify the warrantless seizure of appellant's clothing at the hospital. First, it is asserted that the seizure was incident to the lawful arrest of appellant. In support of this theory, the Commonwealth cites *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *Commonwealth v. Hrynkow,* 457 Pa. 529, 330 A.2d 858 (1974); *Commonwealth v. Gordon,* 431 Pa. 512, 246 A.2d 325 (1968), *cert. denied,* 394 U.S. 937, 89 S.Ct. 1215, 22 L.Ed.2d 469 (1969).

The problem with the Commonwealth's reliance on these cases is that in each one the seizure of evidence occurred *after* the defendant was lawfully placed under arrest. In *Edwards* the police seized defendant's clothing from him while he was in a jail cell. *United States v. Edwards, supra,* 415 U.S. at 801–02, 94 S.Ct. 1234. Similarly, in *Hrynkow,* defendant's coat was taken from him by police at headquarters after his arrest and identification by the victim. *Commonwealth v. Hrynkow, supra,* 457 Pa. at 532, 536–37, 330 A.2d at 860, 862–63. Similarly, in *Gordon* the police seized defendant's clothing at a hospital after he had been taken into police custody. *Commonwealth v. Gordon, supra,* 431 Pa. at 515–16, 518, 246 A.2d at 327, 328.

The crucial question in the instant case is whether appellant had been arrested before his clothing was seized. The test for whether an arrest has occurred is as follows: "An arrest may be accomplished by 'any act that indicates an intention to take [a person] into custody and subjects him to the actual control and will of the person making the arrest.'"

*Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 311 (1963), *cert. denied,* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963); *see Commonwealth v. Farley,* 468 Pa. 487, 494, 364 A.2d 299, 302 (1976). In this case, the only pre-seizure actions by the police officers were their arrival at the intensive care ward and their presence there before requesting appellant's clothing from the nurse. The officers did not communicate to appellant any intention of taking him into custody. The reading of the *Miranda* warnings to appellant did not occur until almost an hour after the police had seized appellant's clothing. The arrival and presence of the police at the hospital ward cannot constitute an arrest under the test articulated in *Bosurgi.*[7] Therefore, we cannot accept the Commonwealth's argument that appellant's clothing was seized incident to an arrest.

The Commonwealth's second theory in support of the warrantless seizure of appellant's clothing rests upon the proposition that when appellant voluntarily placed himself under hospital care, he surrendered control of his personal effects and thus gave up any exclusive right to privacy as to those effects.[8] From this proposition the Commonwealth

7. The Commonwealth also argues that since the police had probable cause to arrest appellant, they were entitled to his clothing. Assuming *arguendo* that probable cause to arrest did exist, there is no legal authority to support this argument. On the contrary, it has long been established that the mere existence of probable cause furnishes no justification for a warrantless search or seizure. *See Chapman v. United States,* 365 U.S. 610, 613, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *Johnson v. United States,* 333 U.S. 10, 14 n. 4, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Agnello v. United States,* 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

8. In refusing to suppress appellant's clothing, the lower court accepted this rationale.

argues that the nurse on duty at the intensive care ward consented to the seizure of appellant's clothing. As authority for this argument, the Commonwealth cites, *inter alia, United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In *Matlock* the police had conducted a warrantless search of a bedroom which was jointly occupied by defendant and his female companion; defendant's companion consented to the search. *Id.* 415 U.S. at 166–67, 94 S.Ct. 988. In remanding the case for a determination of the voluntariness of this consent, the Supreme Court indicated that such consent may be given by one "who possessed common authority over or other sufficient relationship to the . . . effects sought to be inspected." *Id.* 415 U.S. at 171, 94 S.Ct. at 993. In elaborating on this requirement, the Court stated:

"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes . . ."

*Id.* 415 U.S. at 171 n.7, 94 S.Ct. at 993.

Given the *Matlock* test for determining who may legally consent to the search or seizure of another's effects, the narrow issue in the instant case is whether it can be said that the nurse had mutual use and joint access or control over appellant's clothing. The mere statement of the issue suggests the answer. Although it may be conceded *arguendo* that the nurse had joint access and control to appellant's clothing, there was clearly no right to mutual use of the clothing by the nurse or any other member of the hospital staff. The nurse's access to and control of appellant's clothing were for the purposes of safeguarding these effects, not for the purpose of using them. We therefore reject the argument that the nurse's consent validated the seizure of appellant's clothing. Supreme Court cases preceding *Matlock* support our conclusion. *See Frazier v. Cupp,* 394 U.S.

731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (cousin could validly consent to search of duffel bag owned by him and used by him and defendant); *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (hotel clerk could not consent to search of customer's room); *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord could not consent to search of house he had rented to another). *See generally* 22 Vill.L.Rev. 639, 641–44 (1976–77).

The Commonwealth also urges us to adopt the reasoning of the Supreme Court of Washington in the recent case of *State v. Smith,* 88 Wash.2d 127, 559 P.2d 970 (1977). The facts in *Smith* were virtually identical to the case at bar; defendant challenged the warrantless prearrest seizure of his clothing by police at the hospital security ward where he was a patient. *Id.* 88 Wash.2d at 129–132, 559 P.2d at 971–72. The clothing was given to police by a ward clerk after a request by the police. *Id.* 88 Wash.2d at 131, 559 P.2d at 972. The Supreme Court of Washington upheld the validity of the seizure.

There are a number of reasons why we are unable to accept the *Smith* opinion. First, the *Smith* opinion is unclear as to which of several proffered rationales constituted the justification for upholding the seizure. Initially, the court suggested that the seizure occurred while police were in hot pursuit of defendant. *Id.* The facts in *Smith* do not indicate that the officer who seized the clothing was pursuing the defendant.[9] In any event, the instant case clearly is not one involving hot pursuit.

Next, the *Smith* court stated that under the totality of the circumstances, the seizure was reasonable. *Id.* 88 Wash.2d at 137, 559 P.2d at 975. We cannot accept this rationale, because our reading of recent United States Supreme Court cases convinces us that the general reasonableness of a search or seizure cannot alone justify failure to obtain a

9. In fact, the seizure at the hospital occurred after the officer had thoroughly inspected the crime scene. *State v. Smith,* 88 Wash.2d 127, 131, 559 P.2d 970, 972 (1977).

warrant. In *United States v. United States District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), the Court reaffirmed its earlier view that searches and seizures cannot be judged under a "general 'reasonableness' standard without reference to the [fourth amendment's] warrant clause." [10] *Id.* 407 U.S. at 315 n.16, 92 S.Ct. at 2136, *quoting Chimel v. California,* 395 U.S. 752, 764–65, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Finally, the *Smith* opinion justified the warrantless seizure on the grounds that since the ward clerk had joint control of defendant's clothing, she could consent to the seizure. *State v. Smith, supra,* 88 Wash.2d at 139, 559 P.2d at 976. Because the *Smith* court apparently overlooked the "mutual use" element of third-party consent expressly set forth in *Matlock* and implied by earlier Supreme Court cases, *see United States v. Matlock, supra,* 415 U.S. at 171 n.7, 94 S.Ct. 988, we decline to rely upon *Smith* in order to uphold the warrantless seizure in the instant case. [11]

■ The Commonwealth's final contention is that even if appellant's clothing was illegally obtained, its admission into evidence was harmless error. We disagree. The clothing

**10.** We are aware that the more recent case of *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) could be read as marking the Court's return to a general reasonableness standard. *Id.* at 373–75, 96 S.Ct. 3092. *See* 22 Vill.L.Rev. 639, 651 n.77 (1976–77). However, *Opperman* involved the warrantless inventory search of an impounded motor vehicle and for that reason we do not believe it compels a different result in the instant case.

**11.** The *Smith* court also placed considerable reliance upon *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). *Smith v. State,* 188 Wash.2d 127, 133–137, 559 P.2d 970, 973–75 (1977). In *Watson* the Court upheld the warrantless arrest and search of a defendant made pursuant to federal statute. *United States v. Watson, supra,* 423 U.S. at 414–15, 96 S.Ct. 820. Because the arrest and search were made pursuant to a federal statute, the Court in *Watson* began its analysis under a "strong presumption of constitutionality." *Id.* 423 U.S. at 416, 96 S.Ct. 820. Therefore, *Watson* is of little aid to appellee in the instant case, because in this jurisdiction the burden is upon the Commonwealth to prove that the seizure was constitutional. *See Commonwealth v. Ravenell,* 448 Pa. 162, 166, 292 A.2d 365, 367 (1972); *Commonwealth v. Mazzella,* 231 Pa.Super. 247, 250, 331 A.2d 784, 785 (1974); Pa.R.Crim.P. 323(h).

was that worn by appellant on the day of his mother's death and was stained with blood matching hers. In view of the circumstantial nature of the Commonwealth's other evidence, we conclude that the clothing could have contributed to the verdict, and, therefore, its admission cannot be harmless error. *See Commonwealth v. Heatherington*, 477 Pa. 562, 570, 385 A.2d 338, 342 (1978); *Commonwealth v. Story*, 476 Pa. 391, 409, 383 A.2d 155, 164 (1978).

Accordingly, the judgment of sentence is reversed, and a new trial is ordered.

JONES, former Chief Justice, did not participate in the decision of this case.