**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Roger Gonzalez GUTIERREZ,**
**Appellant,**

Superior Court of Pennsylvania.

Submitted Jan. 18, 2000.
Filed April 14, 2000.

James J. Karl, Lancaster, for appellant.

Joseph C. Madenspacher, Asst. Dist. Atty., Lancaster, for Com., appellee.

Before DEL SOLE, TODD and TAMILIA, JJ.

TODD, J.:

¶ 1 Appellant Roger G. Gutierrez appeals from the judgment of sentence of five to ten years imprisonment and a $50,-000 fine imposed by the trial court following the jury's verdict of guilty of possession with intent to deliver cocaine and criminal conspiracy. On appeal, Gutierrez argues that the trial court erred in denying his pretrial motion to suppress the cocaine and other physical evidence seized by police. Gutierrez also argues that his

trial counsel provided ineffective assistance by affirmatively eliciting testimony and by failing to object to testimony regarding Gutierrez's pretrial invocation of his right to remain silent, and also by failing to object to highly prejudicial testimony by a police officer. For the reasons set forth below, we hold that the learned trial court erred in denying Gutierrez's pretrial motion to suppress evidence.[1] Accordingly, we are compelled to reverse the judgment of sentence and to remand the matter for a new trial.

¶ 2 In reviewing a denial of a motion to suppress evidence, this Court must consider only the Commonwealth's evidence and so much of the evidence of the Appellant as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Silo*, 480 Pa. 15, 18, 389 A.2d 62, 63 (1978).

¶ 3 The facts as established at the suppression hearing are as follows. Gutierrez leased a unit in the Twin Towers Apartments ("Twin Towers") in Lancaster, Pennsylvania. Twin Towers has a contract with Vector Security to install, monitor, repair, and inspect Twin Towers' fire alarm and fire prevention system. The city of Lancaster requires that buildings the size of Twin Towers maintain a fire and smoke detection and alarm system. Pursuant to its contract, Twin Towers provided Vector Security with unrestricted access to the building, including each individual apartment. The owner of the building also provided Vector Security with master keys enabling access to the entire premises, including the individual apartment units.

¶ 4 At 9:00 p.m. on May 11, 1998, Vector Security received a "trouble signal call" for Twin Towers. A "trouble signal call" signals not a fire, but some malfunction or tampering with the system. At 10:00 the following morning, a service technician was dispatched to Twin Towers to locate the source of the problem. Gutierrez was at work at the time. When the technician received no answer upon knocking on Gutierrez's apartment door, he entered the unit using his master key. He then proceeded to check the fire detection unit that was located on the ceiling in the one-room apartment. Upon removing the lid to the fire detection unit, the technician saw a shoestring, which he was unable to remove. When the technician pulled the entire fire detection unit away from the ceiling, he discovered a plastic bag containing a powdery white substance attached to the shoestring in the cavity behind the unit. The technician contacted his supervisor and the police.

¶ 5 Upon arriving at the apartment and being admitted by the technician, a police officer inspected the plastic bag containing the white powdery substance and called the drug suppression unit. A detective arrived at the apartment and, upon pulling on the string, discovered three additional plastic bags filled with white powder. After testing the contents of the bags, and determining that they contained cocaine, the detective then obtained a search warrant and seized various items from Gutierrez's apartment, including mail addressed to Gutierrez, a digital scale, baking soda, and a bottle labeled "Bolivian Rock," a cutting agent for cocaine.

¶ 6 On appeal, Gutierrez claims that the evidence seized from his apartment should have been suppressed because the warrantless search of the fire detection unit and ceiling cavity violated the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV; *Commonwealth v.*

---

1. In view of our determination that Gutierrez is entitled to a new trial because the trial court erred in denying his motion to suppress evidence, we do not reach his claims of alleged ineffective assistance of counsel.

*Brundidge*, 533 Pa. 167, 172–173, 620 A.2d 1115, 1118 (1993). A legitimate expectation of privacy exists when an individual, through his conduct, exhibits an actual subjective expectation of privacy and when that expectation of privacy is one that society is prepared to recognize as reasonable. *Id.* at 173, 620 A.2d at 1118.

¶ 7 The Fourth Amendment protects individuals from unreasonable governmental intrusions into their legitimate expectation of privacy. *Commonwealth v. Rathfon*, 705 A.2d 448, 450 (Pa.Super.1997). In determining whether an individual has a legitimate expectation of privacy, we must consider the totality of the circumstances. *Commonwealth v. Ferretti*, 395 Pa.Super. 629, 577 A.2d 1375, 1379 (1990). The expectation of privacy protected under the Fourth Amendment has been held to be greatest in one's home. *Commonwealth v. Shaw*, 476 Pa. 543, 550, 383 A.2d 496, 499 (1978). Indeed, the United States Supreme Court has long recognized that the "physical entry of the home" is the chief evil against which the wording of the Fourth Amendment is directed. *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Furthermore, a warrantless search of a residence is *per se* unreasonable unless justified by a specific exception to the warrant requirement. *Id.* at 586 n. 25, 100 S.Ct. 1371.

¶ 8 The Commonwealth first argues that Gutierrez had no reasonable expectation of privacy because Vector Security had authority to enter the apartment and access the fire detection unit and cavity, thus rendering it an unprotected area of common access. We disagree.

¶ 9 In the present case, the scope of Vector Security's authorized access to Gutierrez's apartment, more specifically to the fire detection unit, was limited to the specific purpose of maintaining, inspecting and monitoring the fire alarm system. Vector Security, through its technician, did not have any other right of use or control

over the apartment. We do not believe that authorized access by a limited group of individuals for such a limited purpose qualifies as common access. Therefore, we hold that Gutierrez had a legitimate expectation of privacy in his apartment and in the fire detection unit located therein which triggered Fourth Amendment protections.

¶ 10 The Commonwealth contends, however, that even if Gutierrez had a reasonable expectation of privacy, the search of his apartment did not violate the Fourth Amendment because Vector Security had "common authority" to be in Gutierrez's apartment and to permit the police to search it. It is undisputed that the Vector Security technician was authorized to be in Gutierrez's apartment to inspect the fire detection unit, and that the technician was authorized to report his observations to the police. As discussed below, however, under the applicable case law, the technician did not have the requisite common authority to consent to a warrantless search of the apartment or the fire detection unit by police.

¶ 11 In order to consent to a warrantless search of property, a third party must possess common authority over the premises or effects sought to be inspected. *U.S. v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

¶ 12 In *Matlock*, the Supreme Court acknowledged that consent may be given by one "who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.* at 171, 94 S.Ct. 988. However, the Court went on to explain that:

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons gen-

erally having joint access or control for most purposes....

*Id.* at 171 n. 7, 94 S.Ct. 988.

¶ 13 In *Commonwealth v. Silo, supra,* our Supreme Court concluded that a hospital nurse did not have common authority to consent to the search of a patient's clothing, despite the fact that she had joint access to and control over the clothing. In holding that the nurse's consent did not validate a seizure of the clothing by police, the court reasoned that:

[a]lthough ... the nurse had joint access and control to appellant's clothing, there was clearly no right to mutual use of the clothing by the nurse or any other member of the hospital staff. The nurse's access to and control of appellant's clothing were for the purposes of safeguarding these effects, not for the purpose of using them. We therefore reject the argument that the nurse's consent validated the seizure of appellant's clothing.

*Silo,* 480 Pa. at 23, 389 A.2d at 66.

¶ 14 Moreover, in a case factually similar to the present case, this Court recently reiterated that common authority is based on mutual use of the property rather than a mere property interest. *Commonwealth v. Davis,* 743 A.2d 946, 951 (Pa.Super.1999). Thus, "a landlord or lessor cannot consent to a search of a tenant's premises, regardless of the lessor's right to enter and inspect." *Id.* (citations omitted).

¶ 15 In *Davis,* the manager of an apartment building was making a preannounced annual repair and maintenance inspection of each apartment in the building. The manager used a pass key to obtain access to each apartment if the resident was not present. During his inspection of the defendant's apartment, the manager observed drug paraphernalia on the kitchen table. He then contacted the police and allowed them to enter the apartment wherein they observed the drug paraphernalia which was still on the table. The police then secured the apartment and went to obtain a search warrant. Upon searching the apartment, they found additional evidence.

¶ 16 This Court held in *Davis* that although the manager had the authority to enter and to inspect the premises for maintenance reasons, "such authority, granted for a specifically limited purpose, does not equate to 'common authority' over the apartment for Fourth Amendment purposes." *Id.* at 952. Accordingly, this Court held that the manager did not possess the common authority necessary to consent to a search of the apartment by police. *Id.*

¶ 17 The facts in *Davis* are sufficiently similar to those in the present case and we are bound by this Court's decision therein. In the instant case, the mere fact that Vector Security had the permission of the landlord to enter Gutierrez's apartment for inspection and maintenance of the fire detection system did not give Vector Security the common authority necessary to consent to a search of the apartment by police. Therefore, we conclude that a warrantless search was not justified on these grounds.

¶ 18 Alternatively, the Commonwealth argues that a warrant was not necessary because the police discovered the drugs in Gutierrez's apartment in plain view. It is well-settled that the "plain view" doctrine applies only when the police observe evidence from a place in which they are entitled to be. *Id.* As this Court stated in *Davis,* the police would not have been able to see the contraband in plain view had they not entered the premises without a warrant. *Id.* In the present case, as in *Davis,* the police were not justified in entering Gutierrez's apartment without a warrant. Thus, the items seized in the present case do not come within the plain view exception to the warrant requirement.

¶ 19 The Commonwealth points out in its brief that this Court has recog-

nized an exception to the warrant requirement applicable when a fire department official inadvertently observes incriminating evidence while performing his duties. *See Commonwealth v. Person*, 385 Pa.Super. 197, 560 A.2d 761, 769 (1989). In *Person*, the Court held that a firefighter may summon police who may observe and seize the contraband without obtaining a warrant. *Id.* Because Vector Security was investigating a fire detection system which the apartment building was required to have under the local fire code, the Commonwealth argues that the exception set forth in *Person* applies in this instance. We disagree.

¶ 20 In *Person*, a fire marshall responded to a fire alarm and arrived after the fire had been extinguished. The fire marshall entered the defendant's apartment, which was determined to be the source of the fire, to inspect for fire and smoke damage. Upon examining one of the bedrooms, the fire marshall observed drug paraphernalia in plain view, and reported his observation to a police officer who was present outside of the apartment. The officer then entered the apartment bedroom and observed the drug paraphernalia and reported the discovery to his sergeant, who was summoned to the scene. When the defendant and his girlfriend returned home, they were confronted by the sergeant and told that the officers wanted to further search the apartment and that if the defendant did not consent to the search, the police would obtain a warrant. The defendant consented and showed the police where additional drugs and drug paraphernalia were located. The additional items were seized by police and the defendant and his companion were arrested.

¶ 21 In *Person*, this Court recognized that the exception to the warrant requirement created therein was "narrow." *Id.* This Court specified that:

> We hold only that a fireman or fire marshall, who is properly inside premises in the course of his firefighting duties and responsibilities, may seize contraband or evidence of criminal activity other than arson which he inadvertently observes in plain view. Further, when contraband is observed in plain view by a fire marshall who is properly on the premises, he may summon a police officer who may observe and seize the contraband without a warrant.

*Id.*

¶ 22 This Court further instructed that in entering a building after having been summoned by police, the police "are not allowed to exceed the scope of the fire fighters' earlier intrusion." *Id.* at 768. Moreover, this Court recognized in *Person* that part of the rationale underlying these decisions and the decisions of numerous other courts that have reached the same conclusion was the inherent exigency of a fire department's response to and investigation of a fire. *Id.* at 765.

¶ 23 In the instant case, the Vector Security technician was not a public fire official responding to or investigating a fire. Instead he was an employee of a private alarm company responding to a non-emergency, routine service call. The mere fact that the building was required to install and maintain a fire detection and alarm system is insufficient to place the technician in the same position as a public fire official. More importantly, there were no exigent circumstances justifying the warrantless entry into and search of the apartment by police.

¶ 24 In reaching its decision in *Davis*, this Court relied in part on the United States Supreme Court's holding in *Taylor v. United States*, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932). In *Taylor*, the Court held that a warrantless search violated the Fourth Amendment where the police had ample opportunity to obtain a warrant and there were no exigent circumstances justifying immediate entry. *Id.* at 6, 52 S.Ct. 466. Likewise, in this case, the police should have secured the premises and waited until they had obtained a warrant

based on the Vector Security technician's observations.

¶ 25 For the reasons discussed above, we hold that the police search of Gutierrez's apartment constituted an unconstitutional warrantless search and that the evidence obtained as a result of the search should have been suppressed by the trial court. Therefore, we must reverse the judgment of sentence and remand the matter for a new trial.

¶ 26 Judgment of Sentence reversed. Remanded for new trial. Jurisdiction relinquished.