J-A17022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER HALL | : | |
| | : | |
| Appellant | : | No. 1245 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 5, 2019
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002498-2018

BEFORE: McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.: **FILED OCTOBER 4, 2021**

Appellant, Christopher Hall, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his jury trial convictions for five counts of persons not to possess firearms, three counts of receiving stolen property, and one count each of possession of a firearm with an altered manufacturer's number, manufacturing a controlled substance, and possession of drug paraphernalia.[1] We affirm.

In its opinion, the trial court set forth the relevant facts and procedural history of this case as follows:

> On December 21, 2017 at approximately 6:45 p.m., Abington Police were dispatched to a home in the 1500 block

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 3925, 6110.2(a), 35 P.S. § 780-113(a)(30), (32), respectively.

Lindbergh Ave. in Roslyn, Montgomery County, for a report of a physical domestic altercation. Officer Ryan Hasara testified that prior to the call officers were advised that there was an active warrant for [Appellant] for aggravated assault. Officer Hasara was aware that [Appellant] lived in the area of the call. Detective Jeffrey Anderson testified that when they arrived on the scene, officers spoke to the 911 caller who identified 1552 Lindbergh Ave. as the location of the altercation; police observed clothing in the front yard. The neighbor indicated that [Appellant] was a participant in the fight. Det. Anderson testified that while some officers were interviewing the 911 caller, officers outside the home heard yelling coming from inside the home and saw the curtains moving. Officers knocked on the door in an attempt to make sure no one in the home was injured and in need of aid. The windows were tinted, making officers unable to see inside the home. Because of the screaming they heard and the nature of the call, when no one answered the door and all movement ceased, officers decided to breach the door, continuing to announce themselves as they did so. Once the door was breached, officers waited to see if anyone would exit the home.

A female came out of the home, later identified as Daisha Hall, and began to fight with police, punching Officer Brown in the nose. Two males and a second female with minor children were also removed from the home. [Appellant] was not in the home. Once Daisha Hall was detained and placed in a patrol car, Det. Anderson rejoined the entry team and went into the home to look for victims….

During the protective sweep of the home, in a second floor bedroom, Det. Anderson observed red cups with what he knew to be marijuana plants in plain view. The cups also had a grow light hanging over them. Det. Anderson did not inspect or seize the plants, but continued to clear the home. Sergeant Shawn Nisbet testified that, based on the discovery of live marijuana plants during the protective sweep of the home, he applied for and obtained a search warrant.

A search of the home recovered approximately 45 marijuana plants at various growth stages from the upstairs bedroom where Det. Anderson observed them in plain view.

- 2 -

Paraphernalia used for the cultivation and manufacturing of marijuana, specifically, potting soil, pots, grow lights, fertilizer and watering containers were recovered. Evidence of marijuana use was also recovered from this bedroom.

In the common areas of the home, police recovered loose marijuana, a digital scale, a money counter, empty yellow jars commonly used as packaging, and a floor safe. Unused glassine baggies labeled with different strains of marijuana were also recovered. Various small plants were found throughout the home. Evidence of drug use and of drug distribution was found in every common area of the home.

In the basement of the home, a makeshift grow room was discovered. A portion of the basement was framed out with wood beams and the beams were covered in heavy plastic. In this area police found: humidifiers, ventilation tubing, grow lights, a hydroponic basin for growing marijuana, a desk covered in residue consistent with use as a processing area, mason jars, vacuum style baggies, and "Big bud" fertilizer. A large trashcan in the basement contained old stalks of full grown marijuana plants that had already been harvested.

In the living room, police found paperwork and mail addressed to both [Appellant] and his co-defendant/wife Erica Johnson in a china cabinet. The china cabinet was in the area of the safe and contained the unused vacuum sealed bags commonly used to package marijuana. A large Tupperware container containing growing materials was also nearby.

In the master bedroom, mail addressed to both [Appellant] and Erica Johnson was recovered, some with recent postage dates. Court documents and [Appellant's] high school diploma were recovered from a nightstand in the room that had numerous boxes of men's high top shoes on top of it. Paperwork from the purchase of a car in [Appellant's] name was also recovered. Professional certificates in Ms. Johnson's name and additional paperwork in both names were recovered. 2017 fishing licenses in both of their names listing Lindbergh Avenue as their address were also recovered.

Additionally, five handguns were also located in this room. Four of the guns were under the mattress, a Colt revolver in a black holster, a Ruger .380 semi-automatic handgun, and two .22 caliber North American Arms revolvers. The parties stipulated that the Ruger and one of the .22 caliber revolvers were stolen. One of the North American Arms revolvers was loaded with an obliterated serial number. A fifth firearm, a Ruger revolver, was recovered from a wardrobe in this room. The parties stipulated that this gun was also stolen. The wardrobe in which it was found contained men's clothing and paperwork with the [Appellant's] name on it, including a fishing license and cell phone bill.

Each of the guns was swabbed for DNA and compared to known samples of [Appellant] and Erica Johnson. Most of the samples recovered from the guns were either too complex to conduct an analysis or [Appellant] and Ms. Johnson could be excluded as contributors. Ms. Johnson could not be excluded from the mixture on the second set of swabs from a revolver. Neither [Appellant] nor Johnson could be excluded from the mixture found on the North American Arms revolver with the obliterated serial number.

Text messages were recovered from phones belonging to [Appellant] and Ms. Johnson. The records and messages show the two were communicating with each other while the police were searching the home on December 22, 2017 at 12:39 a.m. … [W]hile the police are searching the home, [Appellant] texted Ms. Johnson, "five guns in our room." Ms. Johnson replied SMFH. [Appellant] replied SMDH.

Detective Cameron Parker testified as an expert and opined that, based on the evidence recovered from the home, marijuana was being cultivated within the home. He also testified that drug dealers commonly have guns to protect their operations.

Following his arrest, [Appellant] filled out a vital statistics form on which he listed 1552 Lindbergh Avenue as his residence. Additionally, [Appellant] made numerous phone calls from the jail, all of which were recorded. During these calls, he continued to conduct his drug business. Additionally, he referenced "the harvest" in one of the calls

- 4 -

and the quality of the marijuana he is producing. On another call [Appellant] indicated "if there's light and water, I'm going to get money." He also discussed the "tools" in his basement, including the ventilation and air machines.

Following a jury trial, [Appellant] was convicted of five counts of Person Not to Possess a Firearm, Possession of a Firearm with an Altered Manufacturer's Number, Manufacturing a Controlled Substance, three counts of Receiving Stolen Property, and Possession of Drug Paraphernalia. On December 5, 2019, he was sentenced to an aggregate term of 13-28 years in a State Correctional Institution. The docket reflects that a post-sentence motion was filed on December 16, 2019. The undersigned did not rule on the motion within the time permitted by rule. The clerk of courts did not deny the motion by operation of law. On May 26, 2020, the [Appellant] filed the instant appeal.[2] By Order of June 5, 2020, the [Appellant] was directed to file a concise statement pursuant to Pa.R.A.P. 1925(b). Following an extension, he has since complied with that directive.

(Trial Court Opinion, filed December 2, 2020, at 1-6) (internal footnotes and record citations omitted).

Appellant raises the following five issues for our review:

Did the trial court commit reversible error by denying [Appellant's] Motion to Suppress Physical Evidence where the police conducted a warrantless entry into, and search of, [Appellant's] home that was not excused by any exception to the probable cause and warrant requirements in violation of [Appellant's] rights under the Fourth

---

[2] "A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5). Here, the trial court did not enter an order disposing of Appellant's post-sentence motion prior to the filing of a notice of appeal. Consequently, on December 22, 2020, this Court ordered the trial court to enter an order disposing of Appellant's post-sentence motion. The court entered its order denying the post-sentence motion on January 4, 2021.

Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution?

Did the trial court commit reversible error by denying [Appellant's] Motion to Suppress Physical Evidence where the search warrant's authorization for his residence was overly broad because there was insufficient probable cause to believe that all of the items to be searched for and seized would be found on the premises, particularly items relating to drug trafficking and firearms, thereby rendering the search warrant partially invalid and the search for certain items predicated upon that search warrant unlawful in violation of the [Appellant's] rights under the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution?

Did the [suppression] court commit reversible error at the suppression hearing by excluding a video offered by the defense depicting the circumstances surrounding the warrantless search of [Appellant's] home and those present inside the home at the time of the warrantless entry by the police and where the video could have supported the testimony of the only defense witness and undermined the credibility and recollection of police witnesses?

Was the evidence insufficient as a matter of law to support [Appellant's] conviction for manufacturing a controlled substance and possession of drug paraphernalia where there was inadequate proof that [Appellant] was in constructive possession of the contraband?

Was the evidence insufficient as a matter of law to support [Appellant's] convictions on the various counts charging him with theft by receiving stolen property where there was inadequate proof that the [Appellant] knew the items were stolen or believed that they were probably stolen?

(Appellant's Brief at 4-5).

In his first issue, Appellant emphasizes that the police initially responded to a 911 call "to a reported commotion 'outside' on the highway" in front of the residence at 1552 Lindbergh Avenue. (*Id*. at 20). Appellant claims the

police did not observe any evidence indicating that any of the residents were involved in the disturbance, and the police "did not see any signs of an injury outside or leading to the home." (*Id.*) Under these circumstances, Appellant argues that the "evidence fell far short of satisfying the heavy burden of demonstrating that someone inside this private home was in imminent peril." (*Id.*) Appellant concludes that the police made an illegal, warrantless entry into the residence, and the court should have granted his suppression motion on this basis. We disagree.

We review the denial of a suppression motion as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted).

"Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy." *Commonwealth v. Loughnane*, 643

Pa. 408, 420, 173 A.3d 733, 741 (2017). "[A] warrantless search of a residence is *per se* unreasonable unless justified by a specific exception to the warrant requirement." ***Commonwealth v. Gutierrez***, 750 A.2d 906, 909 (Pa.Super. 2000). One exception to warrantless entry of a residence is when exigent circumstances exist:

> The exigent circumstances exception to the warrant requirement recognizes that some situations present a compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action.
>
> In determining whether exigent circumstances exist, a number of factors are to be considered. Among the factors to be considered are: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is a strong reason to believe that the suspect is within the premises to be searched, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, *i.e.*, whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.
>
> Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling.

***Commonwealth v. Richter***, 791 A.2d 1181, 1184-85 (Pa.Super. 2002) (*en banc*) (quoting ***Commonwealth v. Santiago***, 736 A.2d 624, 631-32 (Pa.Super. 1999)).

Instantly, the trial court analyzed the circumstances surrounding the officers' warrantless entry into the property as follows:

> Officers were responding to a call for a physical domestic altercation, which they knew through training and experience often escalate quickly. Ofc. Hasara testified that he knew that [Appellant] lived in the home and had an outstanding aggravated assault warrant. Det. Anderson testified that he was aware that [Appellant] had an outstanding domestic assault warrant which involved an assault with a baseball bat.
>
> Upon arrival, officers saw no one outside the home, but there were articles of clothing in the front yard. While speaking with the neighbor who called 911, officers heard screaming coming from the home and saw curtains rustling upstairs. The first floor windows were tinted, making it impossible to see inside the home. The screaming stopped when police knocked on the door. When no one came to the door, officers made entry to ensure that no one within the home was injured and in need of aid. Based on the totality of these circumstances, exigent circumstances existed as to excuse the need for a warrant.

(Trial Court Opinion at 13) (record citations omitted).

We agree that exigent circumstances excused the need for a warrant to enter the residence. Factors such as Appellant's outstanding warrant for aggravated assault, his connection to the property, the screaming inside the residence, and the details provided by the 911 caller all contributed to the officers' conclusion that someone was potentially injured inside the residence. **See Richter, supra**. Here, the court's factual findings are supported by the record. **See Williams, supra**. Accordingly, Appellant is not entitled to relief on his first issue.

In his second issue, Appellant contends that the warrant to search his

residence was overly broad. Appellant contends that "based on the four corners of the supporting affidavit, the warrant's authorization to search for 'drug trafficking' evidence and 'firearms' was far broader that the underlying probable cause." (Appellant's Brief at 26). Appellant maintains that the supporting affidavit merely described the disturbance and an unquantified amount of marijuana. Appellant concludes that the affidavit's factual summary did not support the warrant's overly broad authorization. We disagree.

"In this jurisdiction, in determining whether probable cause for issuance of a warrant is present, the 'totality of the circumstances' test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), was adopted in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985)." *Commonwealth v. Murphy*, 916 A.2d 679, 681-82 (Pa.Super. 2007), *appeal denied*, 593 Pa. 739, 929 A.2d 1161 (2007). "Under such a standard, the task of the issuing authority is to make a practical, common sense assessment [of] whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 682. "A magistrate's finding of probable cause 'must be based on facts described within the four corners of the [supporting] affidavit[.]" *Commonwealth v. Smith*, 784 A.2d 182, 185 (Pa.Super. 2001) (quoting *Commonwealth v. Stamps*, 493 Pa. 530, 536, 427 A.2d 141, 143 (1981)).

"Under our law, the focus is on the information provided to the **issuing**

- 10 -

**authority** and its response to that information." ***Commonwealth v. Huntington***, 924 A.2d 1252, 1256 (Pa.Super. 2007), *appeal denied*, 593 Pa. 746, 931 A.2d 656 (2007) (emphasis in original).

> The role of the reviewing court and the appellate court is to ascertain whether the issuing magistrate appropriately determined that probable cause existed for the issuance of the warrant. Probable cause is based on a finding of probability and does not require a *prima facie* showing of criminal activity. Both the reviewing court and this Court must accord deference to a magistrate's finding of probable cause.

***Id.*** (internal citations omitted).

Instantly, the affidavit of probable cause included the following averments:

> On December 21, 2017, at 1848 hours, members of the Abington Township Police Department were dispatched to the area of 1541 Lindbergh Avenue via a 911 call for a domestic call that was taking place outside in front of 1552 Lindbergh Avenue. Officers were aware that [Appellant] frequents this address and that he had an active warrant for aggravated assault. Upon police arrival, officers heard yelling, screaming and scuffling coming from inside the residence. Officers were advised that 5 individuals had been engaged in a physical altercation outside the residence and that they pushed an individual into 1552 Lindbergh Avenue. Officers attempted to get a response by knocking on the door but solicited no response from the occupants. Officers on scene were also advised that [Appellant] had been on location during the altercation. For fear that an assault was taking place inside, officers forced entry into the residence where they were met by combative occupants who assaulted police. After securing the combative suspects, protective sweep of the residence was conducted in order to locate any potential victims of the assault, additional participants involved in the physical assault, witnesses, suspects and combatants.

- 11 -

> During this protective sweep, officers observed a marijuana grow site and related items used for the cultivation of marijuana in plain view.

(Affidavit of Probable Cause, dated 12/21/17, at 3). The affidavit also included information regarding the affiant's training and experience in drug investigations. (*See id.* at 3-6). In light of these averments, the magistrate issued the search warrant.

In reviewing the affidavit, the suppression court determined that probable cause supported the issuance of the warrant:

> Instantly, after observing a large number of marijuana plants in plain view, law enforcement had probable cause to search the home and secured the home to obtain a search warrant. The affiant, Sgt. Nisbet, outlined his training and experience relating to drug investigations. The items listed to be searched for were all items commonly used or associated with the manufacture and distribution of controlled substances, including weapons. Based on the observations that officers made when conducting a protective sweep, there was sufficient probable cause to believe these items would be found within the home.

(Trial Court Opinion at 14).

Our review of the record confirms the court's determination. The court accurately summarized the circumstances described in the affidavit, concluding that there was a fair probability that the contraband at issue would be found at the property. *See Murphy, supra*. To the extent Appellant complains that the affidavit was overly broad, we note that it mentioned the grow site that officers observed during their initial sweep of the property. Based on the affiant's extensive training and experience as a narcotics

investigator, he believed additional marijuana and "cultivation material" was located inside the residence. (Affidavit of Probable Cause at 6). On this record, Appellant is not entitled to relief on his second claim. **See Williams, supra**.

In his third issue, Appellant argues that the suppression court refused to admit a video into evidence, which "depicted Erica Johnson's arrival at the scene well after the police entered her home." (Appellant's Brief at 29). Appellant insists this video was relevant and admissible in light of conflicting evidence presented at the suppression hearing. Specifically, Appellant notes that Officer Hasara testified that Ms. Johnson was inside the home when the police first breached the front door. Ms. Johnson, however, "testified that she was at work when the police barged into her home and arrived after the fact in response to a telephone call she received from her children at the scene." (**Id.**) Appellant claims that the video evidence "would have bolstered [Ms. Johnson's] testimony while also undermining the credibility, recollection and/or accuracy of several police witnesses who testified…." (**Id.**) Appellant concludes that the suppression court committed reversible error by excluding the video. We disagree.

"[A]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pretrial motion to suppress." **Commonwealth v. Koonce**, 190 A.3d 1204, 1212 (Pa.Super. 2018) (quoting **Commonwealth v. Bush**, 166 A.3d 1278, 1281–82

(Pa.Super. 2017)). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Id.***

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court ... [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Belknap***, 105 A.3d 7, 9-10 (Pa.Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

Instantly, the trial court and the Commonwealth both argue that Appellant waived this claim due to his failure to raise any objection following the court's ruling to exclude the video. (***See*** Trial Court Opinion at 15; Commonwealth's Brief at 23-24). Assuming without deciding that Appellant properly preserved his claim, we cannot say that the court abused its discretion by refusing to admit this evidence. ***See Belknap, supra***. At the suppression hearing, the court received testimony from Officer Hasara indicating that the police removed Ms. Johnson from the home after the initial breach of the front door. (***See*** N.T. Suppression Hearing, 4/1/19, at 30). Following the testimony from the Commonwealth's police witnesses, Ms.

- 14 -

Johnson's attorney called her as a witness. During her direct examination, Ms. Johnson claimed that she was actually at work when the officers initially breached her front door. (*Id.* at 110). Ms. Johnson further testified that she only learned about the officers' entry into her home after receiving a phone call from her children. (*Id.*) After the phone call ended, Ms. Johnson "clocked out" and drove to her home. (*Id.* at 112).

Ms. Johnson provided additional details regarding her interactions with the police after she arrived at the scene. At that point, her attorney sought to admit a video that Ms. Johnson recorded when she took custody of her children. (*Id.* at 115). The court asked counsel what the video depicted, and counsel responded, "Everything she just testified to right now." (*Id.* at 116). Counsel explained that he first learned about the video that morning, and he shared the video with the prosecutor immediately before the hearing. (*Id.*) Following additional argument, the court declined to admit the video. (*Id.* at 119).

Here, Ms. Johnson's attorney effectively conceded that the video was cumulative of the testimony the witness had already provided. Consequently, the court was well aware of the disputed facts regarding Ms. Johnson's presence at the scene. Under these circumstances, we cannot say that the court abused its discretion by failing to admit the cumulative video evidence. ***See Belknap, supra***. To the extent Appellant's argument can also be interpreted as a complaint about the court's credibility determination in favor

of Officer Hasara, it was within the court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony. **See Koonce, supra**. Therefore, Appellant is not entitled to relief on his third issue.

In his fourth issue, Appellant emphasizes that the active marijuana plants were not found in the bedroom within the home. Further, Appellant asserts that the loose marijuana and drug paraphernalia were found in common areas and in the basement, and that "the contraband and tools were equally accessible to any number of people staying at or associated with this house." (Appellant's Brief at 34). Under these circumstances, Appellant argues that he did not constructively possess the contraband. Appellant concludes that the Commonwealth presented insufficient evidence to support his convictions for manufacturing a controlled substance and possession of drug paraphernalia. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every

element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

The offenses of manufacturing a controlled substance and possession of drug paraphernalia are defined by statute as follows:

### § 780-113. Prohibited acts; penalties

(a)  The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\*      \*      \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

\*      \*      \*

(32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(30), (32).

Additionally, "[w]hen contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…" **Jones, supra** at 121. "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control. **Id**. "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." **Id**. "Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." **Commonwealth v. Valette**, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

Instantly, the trial court determined that Appellant constructively possessed the contraband at issue:

> There was evidence of the cultivation of marijuana found in nearly every room of the home, sufficient to prove both that [Appellant] possessed the marijuana and had the intent to manufacture the same. The number of plants, forty-five, and the variety of cultivation and packaging materials found throughout the home were indicative of a manufacturing operation. Soil, fertilizer, packaging material and plant material was photographed throughout the home. A large garbage can in the basement contained the discarded remnants of harvested marijuana plants.
>
> The evidence that [Appellant] was a resident of the home was likewise compelling. There was mail addressed to [Appellant] at that address found throughout the home. Officers testified [Appellant] was a known occupant of that home. When he was arrested, [Appellant] listed that address on his vital statistics form. A wardrobe containing [Appellant's] clothing also contained vacuum baggies used to package marijuana, further linking [Appellant] to the

cultivation operation. One of the five firearms was also recovered from this wardrobe.

Lastly, [Appellant's] own words link him to the grow operation. Following his arrest, he continued to discuss his operation over the prison phone system, stating, "if there's light and water, I'm going to get money, period." He also discussed the "harvest" and the quality of the product he was manufacturing. He also discussed the "tools" he had in his basement. The totality of these circumstances were sufficient to prove that the defendant had knowledge of the existence and location of the marijuana found within the home and thus the intent to control it, proving his constructive possession.

(Trial Court Opinion at 18-19).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported Appellant's drug convictions. *See Hansley, supra*. Despite Appellant's arguments to the contrary, constructive possession may be found in one or more actors where the contraband is in an area of joint control and equal access. *See Valette, supra*. Under the totality of these circumstances, the Commonwealth demonstrated Appellant's conscious control or dominion over the contraband. *See Jones, supra*.

In his final issue, Appellant argues that the Commonwealth "offered no direct proof that [Appellant] knew the handguns were stolen." (Appellant's Brief at 37). Absent more, Appellant claims that the Commonwealth failed to demonstrate circumstances "beyond mere possession which would indicate that [Appellant] knew or had reason to know that the property was stolen."

(*Id.*)  Appellant concludes that insufficient evidence supported his convictions for receiving stolen property.  We disagree.

The offense of receiving stolen property is defined by statute as follows:

**§ 3925.  Receiving stolen property**

**(a)   Offense defined.—**A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

**(b)   Definition**.—As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S.A. § 3925.

Based upon the statute, this Court has identified the following elements of the offense: "(1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and 3) the intent to deprive permanently." ***Commonwealth v. Robinson***, 128 A.3d 261, 265 (Pa.Super. 2015) (*en banc*) (internal citations omitted).  As to whether a person knows an item is stolen, "[t]he mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen." ***Id.*** at 268 (quoting ***Commonwealth v. Foreman***, 797 A.2d 1005, 1012 (Pa.Super. 2002)).

Circumstantial evidence of guilty knowledge may include,

*inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime.

*Robinson, supra* at 268. *See also Commonwealth v. Gomez*, 224 A.3d 1095 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 236 A.3d 1053 (2020) (holding that additional circumstantial evidence may include defendant's prior convictions rendering him unable to lawfully purchase or possess firearms and expert testimony establishing that drug dealers commonly obtain stolen firearms though illicit means).

Instantly, the officers recovered multiple stolen firearms from Appellant's residence. In addition to Appellant's constructive possession of the stolen firearms, the Commonwealth presented circumstantial evidence to allow the jury to infer that Appellant knew the firearms were stolen. *See Robinson, supra*; *Gomez, supra*. Appellant secreted four of the firearms under a mattress to prevent their detection. Further, Appellant could not lawfully purchase a firearm due to a prior conviction. Viewed in the light most favorable to the Commonwealth as verdict winner, this circumstantial evidence demonstrated Appellant's "guilty knowledge." *See Hansley, supra*. Thus, Appellant is not entitled to relief on his final claim. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/4/2021